W. Virgil HOVIS, an Individual, and Dorothy D. Hovis, His Wife, Appellants

v.

SUNOCO, INC. (R & M), A Pennsylvania Corporation, a/k/a, Sun Company, Inc. (R & M), a/k/a Sun Refining and Marketing Company, a/k/a, Sun Oil Company of Pennsylvania, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 10, 2013.

Filed March 18, 2013.

John E, Lippl, Pittsburgh, for appellants.

Henry F. Reichner, Philadelphia, for appellees.

BEFORE: DONOHUE, J., SHOGAN, J., and WECHT, J.

OPINION BY WECHT, J.:

W. Virgil Hovis and Dorothy D. Hovis ("Appellants") appeal from the order dated April 11, 2012. That order granted summary judgment to Appellee Sunoco, Inc. ("Sunoco"). After careful review, we affirm.

This case concerns application of the Storage Tank and Spill Prevention Act ("the Tank Act" or "the Act"), 35 P.S. §§ 6021.101–6021.2104 (2012), to a dispute involving release of gasoline from an underground storage tank at a service station in Sewickley, Allegheny County. Ownership of the property in question appears to have changed hands between the parties on multiple occasions. Originally, Appellants owned and operated the property. On June 17, 1965, Appellants sold the property to Sunoco. Sunoco owned the property until May 12, 1976, but then sold it back to Appellants.[1] After selling the property, Sunoco continued to provide gasoline to Appellants for sale at the property for a number of years. The parties dispute how long Sunoco provided gasoline to Appellants; the exact dates do not affect the outcome in this matter.[2]

In January 1999, Appellants learned that the underground tanks were leaking and contaminating the property. Brief for Appellants at 5. In May 1999, Appellants removed the storage tanks from the property and began to clean up the contamination. *Id.* Appellants reported the leak to the Pennsylvania Department of Environmental Protection, and sought recovery

---

1. The parties dispute the date upon which the tanks were installed on the property. Appellants aver that Sunoco installed the tanks after the purchase of the property in 1965. Brief for Appellants at 4. Sunoco counters that Appellants installed the storage tanks on the property in 1960, before Sunoco purchased the property. Brief for Appellees at 3. It is sufficient for our purposes to note that the storage tanks were on the property when Appellants repurchased it in 1976, and that Appellants undisputedly became owners of the tanks from that point on.

2. Sunoco claims that it sold gasoline to Appellants until February 20, 1985. Appellants claim that there is evidence that Sunoco provided gasoline to Appellants between 1990 and 1995. As discussed *infra,* because distributing gasoline to gas stations does not make one an "operator" of underground storage tanks for purposes of the Tank Act, the dates of delivery are irrelevant.

from the Pennsylvania Underground Storage Tank Indemnification Board ("USTIF") for costs related to cleanup of the contamination. *Id.* at 5–6. On July 26, 1999, USTIF found that Appellants were eligible for 100% reimbursement of their cleanup costs if they could show that the release occurred after February 1, 1994. *Id.* at 6. However, in March 2000, USTIF ordered forensic testing of the site and determined that some of the spilled gasoline predated the 1994 cut-off date. *Id.* at 6–7. Specifically, the report indicated that some of the gasoline had spilled before 1985, and may have spilled before 1980. *Id.* at 7. Based upon this information, USTIF prorated Appellants' reimbursement to 43% of the total cleanup costs. *Id.*

On April 24, 2002, Appellants commenced this action against Sunoco under § 1305(c) of the Tank Act. Appellants sought recovery for the cleanup costs and diminution in the value of the property arising from the leaking storage tanks, because Sunoco had owned and operated the station prior to 1976. On March 30, 2012, Sunoco filed a motion for summary judgment. Sunoco advanced three arguments in defense against Appellants' claim: (1) that the statute of limitations barred Appellants' claim; (2) that Sunoco was not an "owner" or "operator" as defined by the Act and therefore could not be held liable; and (3) that Appellants presented no evidence that the leak began before 1976 while Sunoco owned the property. On April 11, 2012, the trial court granted the motion for summary judgment on the basis that Sunoco was not an owner or operator for purposes of the Tank Act.

On May 1, 2012, Appellants filed a notice of appeal. On May 3, 2012, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 22, 2012, Appellants filed a timely statement. On June 27, 2012, the trial court issued its Rule 1925(a) opinion.

Appellants raise the following issues:

1. Did the Lower Court apply the proper statute of limitations?
2. Did the Lower Court consider evidence that Sunoco was an owner/operator at the relevant time?
3. Did the Lower court consider evidence that the leak existed before 1976?

Brief for Appellants at 3. Because we conclude that Appellants' second issue is dispositive of this matter in its entirety, we will limit our discussion to its resolution.[3]

▪ Appellants contend that the trial court erred in holding that Sunoco was not an owner or operator for purposes of the Tank Act. Specifically, Appellants argue that Sunoco could be considered an "owner" if the release occurred while it owned the property prior to 1976. In the alternative, Appellants claim that Sunoco is an "operator" under the statute because the station continued purchasing and dispensing Sunoco gasoline after Appellants repurchased the property in 1976. Appellants premise this argument upon the idea that periodically filling an underground storage tank with gasoline demonstrates a level of supervision or control that would qualify Sunoco as an "operator" for purposes of the Tank Act. Brief for Appellants at 22–23.

---

3. Sunoco requests that this Court quash Appellants' brief because it contains citations to material that is not contained in the certified record. Brief for Appellees at 7–8. At oral argument, counsel for Appellants withdrew all portions of Appellants' brief that contain citations to material not within the certified record. It is unnecessary for us to quash the portions of Appellants' brief that do not rely upon the withdrawn material.

Our standard and scope of review over a trial court's order of summary judgment are well-established:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Cassel–Hess v. Hoffer*, 44 A.3d 80, 84–85 (Pa.Super.2012) (citations omitted).

The Tank Act provides that "[t]he owner or operator of a storage tank and the landowner or occupier on whose land a storage tank is or was located shall not allow pollution resulting from, or a release to occur from, a storage tank." 35 P.S. § 6021.1310. Further, the Act grants a right of action for any interested person to bring a civil suit against any owner, operator, landowner, or occupier that is in violation of the Act to compel compliance with the statute. 35 P.S. § 6021.1305(c). Thus, "private citizens may maintain an action against any owner, operator, landowner or occupier for any violation of any provision of the [A]ct." *Juniata Valley Bank v. Mar-*

*tin Oil Co.*, 736 A.2d 650, 658 (Pa.Super.1999) (quoting 35 P.S. § 6021.1305).

The Tank Act defines both an "owner" and "operator" for purposes of liability under the Act. Section 103 defines an "owner" as follows:

(1) In the case of a storage tank in use on the effective date of this act, or brought into use after that date, any person who owns or has an ownership interest in a storage tank used for the storage, containment, use or dispensing of regulated substances.

\* \* \*

(3) In the case of an underground storage tank, the owner of an underground storage tank holding regulated substances on or after November 8, 1984, and the owner of an underground storage tank at the time all regulated substances were removed when removal occurred prior to November 8, 1984.

35 P.S. § 6021.103.

It is clear from the plain language of the Act that Sunoco cannot be classified as an "owner." Under subparagraph 1, the Act applies to owners of storage tanks on the date that the Act became effective, which was in 1989. Because Sunoco sold the property to Appellants in 1976, it relinquished any ownership interest it had well before the Act became effective. While, subparagraph 3 extends the definition of "owner" retroactively to November 8, 1984, for purposes of an underground storage tank, this is still well after Sunoco sold the property to Appellants. Appellants argue that the forensic report creates a question of fact because the USTIF report found that some of the gas may have spilled before 1980. Yet, the Tank Act does not extend a cause of action against an "owner" to any period before 1984.[4]

4. Although the Tank Act grants a cause of action against the owner of an underground

storage tank in instances where the container and all of contents are removed prior to No-

Accordingly, Appellants' claim that Sunoco is an "owner" as defined by the Act must fail.

 Appellants also argue that Sunoco is an "operator" under the Tank Act. However, once again, the language of the statute does not support Appellants' claim. Section 103 of the Act defines "operator" as: "[a]ny person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank." *Id.* The record demonstrates that, after Sunoco sold the property to Appellants, it continued to deliver gas to the property for a period of several years. However, this alone is insufficient to classify Sunoco as an "operator" for purposes of the Tank Act. There is nothing in the record to suggest that Sunoco managed, supervised, altered, or controlled the tanks during the time that Appellants owned the property. Nor is there any reason we can discern to find that a supplier is an operator solely because it delivers gas to an underground storage tank over which it does not exercise control. For these reasons, we agree with the trial court that Sunoco cannot be an "operator" for purposes of the statute. To hold otherwise would be to hold that, under the Tank Act, an oil company is the "operator" of the storage tanks at every gas station to which it delivers its products. Nothing in the language of the statute, and nothing in our precedent, indicates that the Tank Act was intended to have such broad application.

Because Sunoco was neither an owner nor operator as defined by the statute, Appellants had no right to commence an action against Sunoco under section 1305. For this reason, summary judgment on this issue was proper. Since summary judgment was proper on Appellants' sec-

ond issue, we need not address issues 1 and 3. The trial court did not abuse its discretion when it granted Sunoco's motion for summary judgment.

Order affirmed. Jurisdiction relinquished.

vember 8, 1984, here the tanks were not removed until 1999. Therefore, this exception is inapplicable.