J-A07044-14

2014 PA Super 232

| VILLAGE OF FOUR SEASONS ASSOCIATION, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ELK MOUNTAIN SKI RESORT, INC. | |
| Appellant | No. 996 MDA 2013 |

Appeal from the Order entered May 5, 2013
In the Court of Common Pleas of Susquehanna County
Civil Division at No: 2011-1736 CP

BEFORE:  GANTMAN, P.J., DONOHUE, and STABILE, JJ.

OPINION BY STABILE, J.:                **FILED OCTOBER 14, 2014**

Appellant, Elk Mountain Ski Resort, Inc. (Elk) draws water for snowmaking from one of its ponds (Elk Pond), which is connected via a breached berm to the lake (Village Lake) of the Appellee Village of Four Seasons (Village).  As part of a larger dispute between Elk and Village, Village moved for an injunction to stop Elk from drawing water from Village Lake.  The trial court granted Village's cross-motion for partial summary judgment, enjoined Elk from drawing water, and ordered Elk to close the breach in the berm dividing the two bodies of water.  We affirm in part, vacate in part, and remand for further proceedings.

Elk is a ski resort located in Susquehanna County, Pennsylvania. Village is a vacation community located directly below the ski resort.  The land on which Elk is located includes Elk Pond, which is a small pond.

Similarly, the land on which the Village is located includes a man-made lake, Village Lake. Elk Pond adjoins Village Lake. The two bodies of water are separated by a berm, which includes a breach. Water flows through the breach between the two bodies of water. Elk uses Elk Pond and other bodies of water to make snow for its ski slopes. Village uses Village Lake for recreation, including boating.

This appeal concerns whether Village can prevent Elk from using water from Village Lake. The trial court found Village owns the land beneath Village Lake. Accordingly, the trial court concluded Elk has no riparian right to use the water contained in Village Lake. As a result, the trial court granted Village's cross-motion for partial summary judgment, enjoined Elk from using the Village Lake's water, and further ordered Elk to "physically close the opening in the berm between the Village Lake and the adjoining pond, the Elk [Pond]." Trial Court Order, 6/5/13, at 1. This appeal followed.[1]

On appeal, Elk raises several issues and sub-issues for our review, to wit:

> 1. Did the trial court commit reversible error in basing its grant of summary judgment on the doctrine that a lake-bed owner owns all the water lying above his lake bed, when the record

_____

[1] The trial court's order was appealable under Pa.R.A.P. 311(a)(4). After Elk appealed, the trial court stayed effect of the injunction pending resolution of this appeal.

demonstrates that Elk makes snow from water lying above the lake bed it owns?

2. Did the trial court commit reversible error in granting Village's summary judgment motion even though a reasonable fact-finder could conclude that Village's claims are barred by the reasonable-use doctrine of riparian law, by laches, and by Elk's acquisition of an irrevocable license?

3. Did the trial court commit reversible error in granting Village's summary judgment motion on the ground that Elk could not establish that it had a prescriptive right to use the water in question, when the conclusion was based on the trial court's *sua sponte* determination that Village had given Elk an "indulgence" to use the water?

4. Did the trial court commit reversible error in issuing an injunction ordering Elk to undertake an affirmative act (closing the opening in the berm between [Elk Pond] and [Village Lake]) without adequately specifying how Elk was to do so?

Appellant's Brief at 7.

It is well-settled that

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting *Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa. Super. 2012)).

Elk first argues the trial court erroneously "relied on cases holding that an owner of a non-navigable lake bed has exclusive rights to all water that lies above the bed he owns." Appellant's Brief at 25. According to Elk, these cases "dealt with land-locked lakes that were not part of a tributary system[.]" *Id.* Elk claims, because the two bodies of water are part of a tributary system, "[i]t seems more appropriate that riparian law as it applies to flowing water, rather than riparian law as it applies to land-locked lakes, should apply here." *Id.* Additionally, according to Elk, the same cases are distinguishable because they dealt with trespassing onto another's lake, which is not the case here because Elk made no physical intrusion onto Village Lake. *Id.* at 26. We agree.

The trial court, in determining whether Village had the right to prevent Elk from utilizing water from Village Lake reasoned as follows. While "the Village Lake and the Elk Pond are part of a stream that eventually exits into an unnamed tributary," the "standard riparian law as it relates to lakes must be applied since we are ultimately determining what rights attach to a . . . lake[,]" not flowing water. Trial Court Opinion, 5/6/13, at 19.

Having determined the ultimate question here pertains to rights attaching to a lake, the trial court went on to note:

> In Pennsylvania, it is well-settled that, if a body of water is navigable, it is publicly owned and may only be regulated by the

- 4 -

> Commonwealth; ownership of the land beneath would not afford any right superior to that of the public to use the waterway. However, if a body of water is not navigable, it is privately owned by those who own the land beneath the water's surface and the land abutting it, and may be regulated by them. The rule for determining whether bodies of water are navigable is whether they are used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

Trial Court Opinion, 5/6/13, at 17-18 (internal citations, brackets, and quotation marks omitted).

With this background in mind, the trial court first determined that Village Lake was a non-navigable lake. *Id.* at 18. ("In the instant matter, the Village Lake is not navigable because it is not used, or susceptible of being used, in its ordinary condition, as a highway for commerce."). It then determined Village owned the Village Lake's bed. *Id.* ("[I]t goes without saying that [Village] claims ownership over [Village L]ake. As for [Elk], it has acknowledged on multiple occasions that the Village Lake was built by [Village] on [Village]'s property."). Finally, the trial court found that Village, as the owner of land under a non-navigable lake, had the right to regulate Village Lake as it pleased. *Id.* at 20 (citing ***Shaffer v. Baylor's Lake Ass'n, Inc.*** 141 A.2d 583, 585 (Pa. 1958) ("[I]n the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water[.]"); ***Smoulter v. Boyd***, 58 A. 144, 146 (Pa. 1904) (The owner of land under water has the right to control activities on the surface); ***Mountain Props., Inc. v. Tyler***

*Hill Realty Corp.*, 767 A.2d 1096, 1100 (Pa. Super. 2001) ("The common law rule provides that ownership of a lakebed includes ownership of the water above it, and the owner of the lakebed can prevent others from utilizing his or her property."))[2]

A riparian landowner's riparian rights differ based on the characteristics of the adjoining body of water.[3] Non-navigable, land-locked bodies of water are "privately owned by those who own the land beneath the water's surface and the lands abutting it, and may be regulated by them." *Mountain Props.*, 767 A.2d at 1100. However, for non-navigable watercourses, *i.e.*, bodies of water that are flowing or "tributary," "[o]wnership of the land does not include ownership of the water which flows over or past it." *Standard Plate Glass Co. v. Butler Water Co.*, 5 Pa. Super. 563, 576 (1897); *see also Scranton Gas & Water Co. v. Del.,*

---

[2] *Loughran v. Matylewicz,* 81 A.2d 879, 882 (Pa. 1951) ("[I]n the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water[.]"); and *Miller v. Lutheran Conference & Camp Ass'n*, 200 A. 646, 650 (Pa. 1938) (same), were also cited by the trial court.

[3] There is no dispute that Elk Pond and Village Lake are non-navigable. The Commonwealth owns navigable bodies of water. *Mountain Props.*, 767 A.2d at 1100. Bodies of water are "navigable" if "used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *Id.*; *see also Pa. Power & Light Co. v. Maritime Mgt., Inc.*, 693 A.2d 592, 594-95 (Pa. Super. 1997) (*en banc*) (discussing the test for navigability).

*Lackawanna & W. R.R. Co.*, 88 A. 24, 25 (Pa. 1913) ("It is settled law that riparian owners have no ownership of running water."); *Irving's Ex'rs v. Burgess & Town Council of the Borough of Media*, 10 Pa. Super. 132, 145 (1898) ("Ownership of riparian land does not include ownership of the water which flows over or past it, it is true."), *aff'd per curiam*, 45 A. 482 (Pa. 1900).

For flowing watercourses, an upper riparian owner has the right to make reasonable use of the water flowing on or past his property. *See Lucas v. Ford*, 69 A.2d 114, 116 (Pa. 1949).

> The rule of law is uniform and undoubted that every riparian owner is entitled, as an incident to his land, to the natural flow of the water of a stream running through it, undiminished in quantity and unimpaired in quality, **subject to the reasonable use of the water by those similarly entitled**, for the ordinary purposes of life; and any sensible or essential interference therewith, if wrongful, whether attended with actual damage or not, is actionable.

*Clark v. Pa. R.R. Co.*, 22 A. 989, 990 (Pa. 1891) (emphasis added); *see also Alburger v. Phila. Elec. Co.*, 535 A.2d 729, 731 (Pa. Cmwlth. 1988) (plurality opinion) (noting that Pennsylvania is a "reasonable use" jurisdiction).

Thus, although Village owns the land underneath the waters of Village Lake, it may not own the water itself to the exclusion of all others. If Elk Pond and Village Lake are part of a flowing watercourse, Elk—as an upper riparian owner—has the right to reasonably use the water. Its use cannot harm Village's interest, *i.e.*, it cannot use so much water that Village can no

- 7 -

longer use Village Lake for recreation. If Elk Pond and Village Lake are non-flowing bodies of water, however, Village has plenary rights to the water in its lake, and it can bar Elk from drawing any water from Village Lake.

At this stage in the case, summary judgment is appropriate only if Elk cannot produce facts necessary to support a *prima facie* affirmative defense of reasonable use. Pa.R.C.P. 1035.2(2); **Hovis**, 64 A.3d at 1081. We hold that Village failed to meet the summary judgment standard, because a factual dispute exists regarding whether Elk Pond and Village Lake are non-flowing bodies of water, or part of a watercourse.

We also hold that Elk has not waived its affirmative defense of reasonable use. The trial court erroneously held that Elk needed to name the defense in new matter. This Court has held otherwise. There is no need to name an affirmative defense "if facts sufficient to constitute the defense are pled." **Iorfida v. Mary Robert Realty Co.**, 539 A.2d 383, 397 (Pa. Super. 1988) (finding that a single paragraph of defendant's new matter sufficiently raised abandonment as an affirmative defense). In this case, Elk's Answer and New Matter to Plaintiff's First Amended Complaint, 8/1/12, ¶¶ 7, 38, and 39 plead that Elk acted "reasonably and in good faith at all times," that Elk has caused no material harm or injury to Village, and that the Susquehanna River Basin Commission (SRBC) has granted Elk consumptive water-use permits to use Elk Pond for snowmaking. Taken together, these paragraphs are "susceptible of the inference," **Iorfida**, 539

A.2d at 387, that the facts alleged, if true, constitute reasonable use of the water in Elk Pond.[4]

We additionally reject Village's argument that Elk's new matter constitutes insufficient boilerplate language and fails to satisfy Pennsylvania's fact-pleading standard. It is true that boilerplate allegations—without sufficient facts—constitute defective pleading. Pa.R.C.P. No. 1019(a). However, a party must file preliminary objections to preserve a claim that a pleading is insufficiently specific. Pa.R.C.P. No. 1028(a)(3). A party who fails to file preliminary objections waives any challenge to the specificity of that pleading. Pa.R.C.P. No. 1032(a); *see also* 3 Goodrich Amram 2d § 1028(b):2 (2014); *Pergolini v. Lun*, No. 080800249, 2012 WL 8530896, at *7 (Pa. C.P. Phila. June 27, 2012), *aff'd sub nom.*, *McNamara v. Tseng*, 75 A.3d 555 (Pa. Super. 2013) (unpublished memorandum).[5] Because Village failed to file preliminary objections to Elk's new matter, Village cannot now challenge its factual specificity.

_____

[4] We need not address Elk's argument that a plaintiff must prove "unreasonable use" as opposed to the defendant proving "reasonable use."

[5] Though Village cites *Pergolini* for the proposition that boilerplate language constitutes insufficient fact pleading, the holding of *Pergolini* directly contradicts Village's position. In *Pergolini*, the defendants' new matter stated, "Defendant pleads any and all applicable defenses set forth in [Pa.R.C.P. No.] 1030 which may apply to this case." *Pergolini*, 2012 WL 8530896, at *7. The trial court ruled that the plaintiffs' failure to file preliminary objections waived their claim that the defense of license was improperly raised. *Id.*

Turning to the merits, we hold that Elk put forth sufficient evidence to overcome Village's cross-motion for partial summary judgment. For example, Elk's general manager testified in deposition that Elk Pond is fed by, or eventually flows into, the East Branch of Tunkhannock Creek. Village Cross-Motion for Partial Summary Judgment, 1/16/13, Ex. B., Deposition of Gregg A. Confer, 1/11/12, at 40-46. Eric Roof, Compliance Manager for the SRBC, testified that Elk Pond is an "on-stream" pond, *i.e.*, a wide spot in a stream, and that surface water flows into the pond, and eventually out of it into the creek. Elk's Memo of Law in Opposition to Village's Cross-Motion for Partial Summary Judgment, 4/11/13, Ex. C, Deposition of Eric Roof, 1/15/13, at 68, 77-78. The SRBC does not adjudicate property or riparian rights, and therefore its issuance of permits is dispositive neither of the nature of Elk Pond as a watercourse nor of the reasonableness of Elk's use of water under riparian law.[6] Its issuance of permits, however, is sufficient to raise a **factual** dispute that Elk Pond and, therefore, Village Lake, are part of a watercourse that eventually drains into the Susquehanna River.

To be entitled to reasonable use of the water in Village Lake, Elk had the burden of proving that the water is flowing or tributary. We express no opinion on whether Elk can meet that burden, but we find that factual issues

_____

[6] The compact establishing the SRBC disclaims any effect on the riparian law of the signatory governments. 32 P.S. § 820.1, Susquehanna River Basin Compact, art. 15.19.

exist regarding (1) whether Elk Pond and Village Lake are land-locked bodies of water or part of a flowing watercourse; and (2) if the latter is true, whether Elk's use of water is reasonable under riparian law. Therefore, the trial court erred in granting Village's cross-motion for summary judgment. *See* Pa.R.C.P. No. 1035.2 (summary judgment inappropriate where factual disputes exist); *Hovis*, 64 A.3d at 1081 (same).

We turn next to Elk's claim that the trial court erred in rejecting its claim of a prescriptive easement to use the water in Village Lake. "A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years." *Walley v. Iraca*, 520 A.2d 886, 889 (Pa. Super. 1987); *see also McNaughton Props., LP v. Barr*, 981 A.2d 222, 225 n.2 (Pa. Super. 2009). Moreover, the party asserting the easement must demonstrate "clear and positive" proof. *Walley*, 520 A.2d at 889; *see also Pittsburgh & Lake Erie R.R. Co. v. Township of Stowe*, 96 A.2d 892, 894 (Pa. 1953) ("[A prescriptive easement] will be upheld only if there is clear and positive proof of its existence[.]"). Permissive use defeats a claim of a prescriptive easement. *Morning Call, Inc. v. Bell Atl.-Pa., Inc.*, 761 A.2d 139, 143 (Pa. Super. 2000); *see also Borens v. Krywoshyja*, 184 A.2d 378, 380 (Pa. Super. 1962). The landowner has the burden of proving consent, but only after the alleged easement holder proves the use was adverse, open,

notorious, and continuous for 21 uninterrupted years. *Walley*, 520 A.2d at 889.

The trial court ruled Elk could not establish that its use of Village Lake was adverse. Trial Court Opinion, 5/6/13, at 10-13. The trial court found, based on a photograph, that Village Lake did not exist prior to June 11, 1960, and that by letter sent on December 12, 1980, Village granted Elk an indulgence to use Village Lake for snowmaking. *Id.* We agree with Village that the trial court did not err in rejecting Elk's prescriptive easement claim. The 1980 correspondence[7] shows that Village consented to Elk's use of Village Lake. Consent defeats a claim of adverse use. Therefore, Elk cannot show that its use of Village Lake was adverse for the requisite 21 years.[8]

---

[7] In pertinent part, the 1980 letter, as found by the trial court, states:

> With reference to the water in the lake, we had extensive damage to our docks last year, however, this year we have made provisions to unhook our docks and have them float so that they may rise or fall with the water level. **We would be happy to work with you with whatever water we have that you need, providing it doesn't weaken our damn [sic] by taking the pressure off of it or ruin our docks or kill our fish.**

Trial Court Opinion, 5/6/13, at 9 (emphasis in original).

[8] We find no merit to Elk's attempt to distinguish express consent from indulgence. Either defeats the adverse element of a prescriptive easement claim. *See Walley*, 520 A.2d at 889 (defendant obligated to present clear and positive proof that use of plaintiff's land was adverse to plaintiff's interests); *see also Flannery v. Stump*, 786 A.2d 255, 258-59 (Pa. Super. *(Footnote Continued Next Page)*

Next, we address whether the trial court erred in rejecting Elk's claim of laches. A defendant raising laches must show "that because of delay in enforcing a right, some change has occurred to the prejudice of the defendant, which makes inequitable the enforcement of the plaintiff's claim." *Mariner v. Rohanna*, 92 A.2d 219, 221 (Pa. 1951); *see also In re Estate of Aeillo*, 993 A.2d 283, 287 (Pa. Super. 2010).

> The doctrine of laches:
>
> is an equitable doctrine which bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. In order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. The question of laches is factual and is determined by examining the circumstances of each case. Prejudice in the context of a claim of laches means that the party must change his position to his detriment in order to invoke laches. Furthermore, laches is an equitable doctrine that should not be applied in favor of a person who has failed to take required action on his own.

*In re Estate of Aiello*, 993 A.2d 283, 288 (Pa. Super. 2010) (internal citations omitted).

Here, Elk had the burden to establish, by competent evidence in its opposition to summary judgment, that Village's delay in enforcing its water

*(Footnote Continued)* ———————

2001) ("[T]o establish a property right by prescription, the use upon which it is based **must be adverse** to the rights of the owner of the land. If the use is the result of some lease, **license**, **indulgence**, or special contract given by the owner, it is not adverse.") (first emphasis in original; second and third emphases added) (quoting *Margolin v. Pa. R.R. Co.*, 168 A.2d 320, 322 (Pa. 1961)).

rights caused prejudice to Elk under circumstances that would make it inequitable to enforce Village's claim.

The trial court concluded that Elk waived the defense of laches by failing to plead it in new matter. Trial Court Opinion, 5/6/13, at 14. The trial court was mistaken. Elk in fact raised this defense in its defensive pleadings. **See** Elk Mountain Ski Resort, Inc.'s Answer and New Matter to Plaintiff's First Amended Complaint, 8/1/12, ¶ 44 ("Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.").[9]

The trial court's error in finding this claim waived is harmless, since we find, in any event, Elk did not meet its burden to establish its laches claim. Elk maintains it was error to dismiss its laches claim because it spent considerable effort and money creating its ski resort dependent upon water from Elk Pond. Elk assets Village, aware of Elk's efforts, sat on its purported water rights for decades before seeking to enjoin Elk from using Village's water (which Elk denies).[10] Elk claims it spent millions of dollars to install snowmaking equipment specially tailored for Elk Pond. Initially, we note

---

[9] Village argues that Elk failed to satisfy Pennsylvania's fact-pleading standard by pleading no material facts in support of laches in new matter. Village waived this argument by failing to file preliminary objections. See the discussion concerning waiver of defects in a pleading by failure to file preliminary objections, **supra**.

[10] Of course, should the fact-finder ultimately determine Elk is not using Village's water as Elk at times contends, Elk's laches argument becomes moot.

that while Elk recites numerous general improvements to its snowmaking operations, it falls short of demonstrating the extent to which these changes related to its dependence upon use of water from Village Lake to sustain its laches argument. Elk apparently draws water from several sources. More to the point, Elk's laches claim fails because, like its prescriptive easement claim, Village's consent or indulgence for Elk's use of water, as reflected in the 1980 letter, clearly stated Village was willing to work with Elk on water, providing it does not weaken Village's dam, ruin its docks, or kill Village's fish. Elk was on notice since 1980 it did not possess an unfettered and indefinite right to rely upon Village's water. Village, in effect, informed Elk should Village suffer adverse consequences from Elk's drawing of water from Village's lake, it would object. Therefore, Elk did not demonstrate Village sat upon and delayed enforcing its rights to establish the required prejudice to support its laches claim under circumstances that would render enforcement of Village's claim inequitable.

We finally address whether the trial court erred in rejecting Elk's claim that it had an irrevocable license to use the water in Village Lake. A license is a "personal privilege to perform an act or a series of acts on the land of another." *Kovach v. Gen. Tel. Co.*, 489 A.3d 883, 885 (Pa. Super. 1985). A license may be written, but is usually oral. *Id.* Licenses are freely revocable, and become irrevocable only when the licensee relies on it to his detriment, by expending money, labor, or treating his property differently because of the license. *Zivari v. Willis*, 611 A.2d 293, 296 (Pa. Super.

- 15 -

1992); *see also Morning Call*, 761 A.2d at 144 ("The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract.") (internal quotation omitted). The use of water in a stream can be the subject of a license. *Thompson v. McElarney*, 82 Pa. 174, 177-78 (1876). Irrevocable license is an affirmative defense. Pa.R.C.P. No. 1030(a). As such, it must be pleaded in new matter, or it is waived. Pa.R.C.P. No. 1032(a); *Iorfida*, 539 A.2d at 386.

The trial court correctly concluded that Elk waived the affirmative defense of irrevocable license by failing to plead it in new matter. Although Elk directs this Court's attention to three paragraphs of its new matter, none of those paragraphs—or indeed any of Elk's pleadings—mentions irrevocable license. *Iorfida*, discussed *supra*, does not apply, because there are **no** facts and **no** legal conclusions pleaded that could plausibly support a defense of irrevocable license. By failing to plead this affirmative defense, Elk waived this potential defense.[11]

_____

[11] Assuming, *arguendo*, that Elk did not waive its claim of irrevocable license, summary judgment was proper. The justifiable reliance necessary to make a license irrevocable requires proof that (1) reliance was after the grant of a license; (2) the licensee cannot be restored to his original position; (3) and the expenditures outweigh the benefits. *See Buffington v. Buffington*, 568 A.2d 194, 200-01 & n.7 (Pa. Super. 1989). Elk failed to

*(Footnote Continued Next Page)*

Having reviewed the briefs and record, we conclude that the trial court erred in granting summary judgment to Village on Elk's claim that it is an upper riparian owner with the right of reasonable use of water from Village Lake for snowmaking. The trial court correctly granted summary judgment on Elk's remaining claims of prescriptive easement, laches, and irrevocable license.[12] Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2014

_(Footnote Continued)_ ————————

meet its burden of showing justifiable, detrimental reliance. Aside from general statements that use of Village Lake allowed Elk to improve its snowmaking operations, no evidence of record exists as to when Elk made improvements, how much they cost, whether they were related to the water drawn from Village Lake, or whether Village knew about them. Thus, Elk failed to present _prima facie_ evidence of justifiable reliance.

[12] Given our disposition, we do not need to address at this time Elk's argument that the trial court's injunction is too vague.