J-A30037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REZRO, INC., D/B/A AMERICAN ATM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MAXIMO LANFRANCO D/B/A MAXI GROCERY AND BANK EXPRESS INTERNATIONAL, INC. | |
| APPEAL OF: MAXIMO LANFRANCO D/B/A MAXI GROCERY | No. 107 EDA 2015 |

Appeal from the Judgment Entered February 9, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2013, No. 00297

BEFORE:  MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

CONCURRING MEMORANDUM BY JENKINS, J.:  **FILED FEBRUARY 12, 2016**

I concur in the result of the learned Majority's memorandum decision vacating the judgment and remanding this matter to the lower court based on the Majority's discussion of the damages awarded by the lower court.  I write separately, however, to address the validity of the contract, a discussion of which I feel is necessary before examining the lower court's damage award.

Appellant's first, second, third, and fifth arguments all concern different aspects of the contract's validity.  **See** Appellant's Brief, pp. 13-24,

_____

[*] Former Justice specially assigned to the Superior Court.

27-31. Notwithstanding Appellant's claims to the contrary, the contract is valid and enforceable.

a. *Meeting of the Minds*.

Appellant first claims there was no "meeting of the minds" regarding the renewal provision of the contract. *See* Appellant's Brief, pp. 13-20. This claim lacks merit.

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa.Super.2013), *reargument denied* (Feb. 4, 2014), *appeal denied*, 96 A.3d 1029 (Pa.2014) and *appeal denied*, 96 A.3d 1029 (Pa.2014) (quoting *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509–10 (Pa.Super.2013)).

"Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 25 (Pa.2011); *see also Standard Venetian Blind Co. v. Am. Empire Ins. Co*., 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (noting that, in the absence of proof of

fraud, failure to read a contract is an unavailing excuse or defense and cannot justify an avoidance, modification, or nullification of the contract or any provision thereof).

The renewal portion of the instant contract reads as follows:

### IV.  LENGTH OF AGREEMENT

(A)  The ATM must stay on the installed position for the entire term unless removed or moved in compliance with this or other sections of this agreement.  The length of this agreement shall be for forty eight (48) months from commencement date.  Unless cancelled in accordance with section IV(B), a new lease term will commence at the end of the previous term.

(B)  Proper notice shall be deemed given if either Merchant/Lessor or American ATM gives written notice to the other party, at least one hundred twenty (120) days before the end of the current ATM Placement Agreement, indicating that no further agreement will be entered into.

(C)  Notwithstanding section (B), before Merchant notifies American ATM of it's [sic] intent to not renew, Merchant agrees to allow American ATM the right of first refusal and match any new offers made to Merchant by another ATM organization.  Merchant agrees to act in good faith and provide documentation of offers made.  Failure to do so will result in Merchant agreeing to accept an increase of five cents per surcharge transaction and renewing this agreement for (5) additional years.

ATM Floor Space Lease, Paragraph IV.

This provision contains no ambiguity.  It provides that (1) the contract lasts 48 months; (2) in the absence of proper termination,[1] a new lease

---

[1] Despite Appellant's multiple claims to the contrary throughout his brief, either party may terminate the contract upon proper notice.  **See** ATM Floor Space Lease, Paragraph IV(A).

term will commence at the end of the period; (3) proper notice of termination must be given 120 days prior to the end of the agreement; and (4) Rezro is granted a right of first refusal regarding any competing offers Appellant receives during the contract term. Appellant's failure to read this contract does not excuse him from this unambiguous contract. *See Samuel-Bassett*, *supra*; *Standard Venetian Blind*, *supra*.

The trial court found:

> The evidence shows [Appellant] neither read the Agreement nor had the Agreement translated into Spanish before signing it. Judge DiVito found [Appellant] did not request a translator or translation when signing and was not coerced to sign the Agreement. Findings of Facts ¶¶ 7,8. These findings were not challenged on appeal and this court will not disturb them. The evidence also shows [Appellant] had access to English[-]speaking people who could have reviewed the Agreement for [Appellant] before it was signed. [Appellant] did not avail himself of this opportunity.

1925(a) Opinion, p. 6. Additionally, the evidence illustrated that Appellant was an experienced businessman who had been running bodegas for at least 15 years.

Appellant's claim that there was no "meeting of the minds" regarding this contract must fail.

### b. *Consideration for the contract extension*.

Appellant's second claim contends that the contract's renewal clause is invalid because (1) there was no consideration paid for the extension of the contract to a second four-year term, and (2) Rezro could walk away from the contract at any time. *See* Appellant's Brief, pp. 20-21. This claim also fails.

The renewal term was part of the original contract. As the trial court noted, the contract was never modified or amended. *See* 1925(a) Opinion, p. 7. Therefore, no additional consideration[2] was required.

### c. *Whether the contract was a lease or a license*.

Appellant's third claim argues the contract is a license, not a lease. *See* Appellant's Brief, pp. 21-25. He is incorrect.

"In general, a license is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or estate." *Morning Call, Inc. v. Bell Atl.-Pennsylvania, Inc.*, 761 A.2d 139, 144 (Pa.Super.2000); *see also Sparrow v. Airport Parking Co. of Am.*, 289 A.2d 87, 91 (Pa.Super.1972) (explaining that a purely personal privilege to do certain acts on land, but not exercise exclusive possession and enjoyment for a term specified is a license, not a lease). "Licenses are freely revocable, and become irrevocable only when the licensee relies on it to his detriment, by expending money, labor, or treating his property differently because of the license." *Vill. of Four Seasons*

---

[2] The original consideration consisted of Rezro providing the machine, maintenance, and cash stocks, and gaining profits in exchange for Appellant receiving a $0.50 fee for every surchargeable transaction. As Rezro notes, while the presence or absence of consideration may be a relevant factor in certain circumstances, "[c]ourts generally will not inquire into the value of consideration where it is clear that adequate consideration exists[.]". *Delaware Valley Factors, Inc. v. Ronca*, 442 Pa. Super. 609, 613, 660 A.2d 623, 625 (Pa.Super.1995).

***Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.***, 103 A.3d 814, 824 (Pa.Super.2014).

Here, Appellant granted Rezro exclusive possession of floor space (to the exclusion of other competitors) upon which to place an ATM machine for a definite period of time. This was a lease, not a license. Further, as the trial court and Rezro argue, if viewed as a license, it became irrevocable by Rezro's expenditure of money and labor to maintain the ATM machine and continually assure its proper operation and cash stocks.

Appellant's argument that this was a freely revocable license and not a lease is incorrect.

### d. *Whether the contract was a contract of adhesion*.

Appellant's fifth claim alleges the contract was an unconscionable contract of adhesion. ***See*** Appellant's Brief, pp. 27-31. Specifically, Appellant appears to claim that the contract's renewal provisions are unconscionable and therefore void *ab initio*. ***See id.*** He alleges the "fine print" contains "indecent" provisions that the parties never negotiated or discussed. ***Id.*** at 28. He is incorrect.

"'Unconscionability' is a defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." ***Germantown Mfg. Co. v. Rawlinson***, 491 A.2d 138, 145 (Pa.Super.1985). In Pennsylvania, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to

the other party." ***Witmer v. Exxon Corp.***, 434 A.2d 1222, 1228 (Pa.1981); ***see also McNulty v. H&R Block, Inc.***, 843 A.2d 1267, 1273 (Pa.Super.2004) ("[a] determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions."). Otherwise stated, contractual unconscionability is shown by the illustration of both procedural and substantive unconscionability, although not necessarily in equal proportion.

> [Procedural] unconscionability involves contractual terms which are not typically expected by the party who is being asked to "assent" to them. An unexpected clause often appears in the boilerplate of a printed form and, if read at all, is often not understood. By signing such a form, a party is bound only to those terms which such party would reasonably expect such a printed form to contain. If the form contains a material, risk-shifting clause which the signer would not reasonably expect to encounter in such a transaction, courts have held that the clause may be excised as it is unconscionable.

***Germantown Mfg.***, 491 A.2d at 146. "Substantive unconscionability" refers to contractual terms that are "unreasonably favorable to the drafter[.]" ***Huegel v. Mifflin Const. Co., Inc.***, 796 A.2d 350, 357 (Pa.Super.2002). However, courts have refused to hold contracts unconscionable simply because of a disparity in bargaining power. ***Witmer***, 434 A.2d at 1228.

"An adhesion contract is a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer,

who adheres to the contract with little choice about the terms.'" ***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1190 (Pa.2010) (*quoting* Black's Law Dictionary (8th Ed. 2004), p. 342). "[T]he determination that an adhesion contract is at issue, by definition fulfills the second prong of the unconscionability test." ***McNulty***, 843 A.2d at 1273 n.6.

The instant contract is a standard equipment lease contract. It contains no small print, no unexpected contractual terms or provisions, and no terms that are difficult to interpret or understand. Likewise, the contract is not unreasonably favorable to the drafter. Further, this is not a contract of adhesion.[3] In short, this contract is not unconscionable. This claim also fails.

As stated ***supra***, I feel the above contractual validity analysis must precede this Court's discussion of the trial court's awarded damages. The analysis now complete, I concur in the result of the Majority's damages analysis and agree that the matter must be vacated and remanded.

Mundy, J. joins this Concurring Memorandum.

---

[3] This is evident by the fact that the one term Appellant attempted to negotiate – the term of the lease – was adjusted exactly as he had requested, down from 5 years to 4 years.