J-A29017-20

2021 PA Super 77

| | | |
|---|---|---|
| ASSOCIATES OF CHAPMAN LAKE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE J. LONG AND ARYN LONG | : | |
| | : | |
| Appellants | : | |
| | : | No. 347 MDA 2020 |
| | : | |
| EUGENE J. LONG AND ARYN LONG | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ASSOCIATES OF CHAPMAN LAKE, | : | |
| INC. AND KEN SREBRO | : | |

Appeal from the Judgments Entered on February 14, 2020,
in the Court of Common Pleas of Lackawanna County,
Civil Division at No(s):  2014-CV-2781,
2014-CV-4917.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:                    **FILED APRIL 22, 2021**

Eugene and Aryn Long, husband and wife, appeal from the judgments

entered in favor of The Associates of Chapman Lake, Inc. and Ken Srebro

("Associates") in these consolidated cases.  The Longs own property next to

Chapman Lake, maintain a dock on the lake, and have used the lake

recreationally since buying the land in 2007.  The Associates, who bought the

_____

[*] Retired Senior Judge assigned to the Superior Court.

various parcels of land beneath the lake between 2007 and 2012, began charging the Longs (and other residents) $100 per year to use the lake, but the Longs refused to pay that fee.  This litigation ensued.

After a bench trial, the Court of Common Pleas of Lackawanna County ruled that the Longs could not use Chapman Lake for recreation.  It deemed this use to be a trespass into and upon the lake.  In making its decision, the trial court misinterpreted a 19th-century conveyance that granted the prior owners of the Longs' property the right to use the lake as if they co-owned it. Under Pennsylvania property law, that right passed to the Longs.  Thus, we vacate the order denying post-trial relief and remand for the entry of decrees and judgments in favor of the Longs.

## I.  Factual History

Chapman Lake has undergone many changes over the past 125 years, and its history is critical to this case.  The lake covers about 100 acres of Lackawanna County.  Although the lake supports motorboats, jet skis, and other light watercraft, it is closed to the rivers and, thus, the parties agree that it has always been "non-navigable."[1]

---

[1] "Non-navigable waters" versus "navigable waters" are terms of art.  Waters are navigable if "used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." **Mountain Properties, Inc. v. Tyler Hill Realty Corp.**, 767 A.2d 1096, 1100 (Pa. Super. 2001).  Pennsylvania's non-navigable lakes and ponds are private, but the Commonwealth holds title to navigable waters in trust for the use of all. **See, e.g., Vill. of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort,**

In the 1800s, farms bordered Chapman Lake.  According to a title searcher, the Longs' lakefront property came "from two chains of title.  One would be what you would call the Lee Farm and the other would be what you would call the Finch Farm."  N.T., 11/7/2018, at 27.  The Lee Farm was over 100 acres and originally extended under a portion of the lake.

During the 1890s, The Jerymn and Rush Brook Water Co. purchased the other parcels of land under Chapman Lake.[2]  The water company then announced plans to raise Chapman Lake by four feet.  This would submerge five acres of the Lee Farm.  In 1894, P.J. Lee, Ellen V. Vail, S. Esther Lee, Georgiana Lee, Susie B. Lee, and Hattie X. Smith ("the Lees") sued the water company over the impending taking of their property.

The Court of Common Pleas of Lackawanna County assembled a Board of Viewers, which visited the Lee Farm in 1895 and determined:

> That there will be taken of the lands of [the Lee Farm] about 5 acres, of which three and 85/100 acres were covered by water of what is known as Chapman Lake, and about one and 1/10 acres land will be taken . . .

---

*Inc.*, 103 A.3d 814, 820 (Pa. Super. 2014).  The Commonwealth has never compiled a formal list of its private and public waters.  *See* Pennsylvania Boat & Fish Commission, *Public Rights in Pennsylvania's Water F.A.Q. No. 13*, available at https://www.fishandboat.com/LearningCenter/FAQs/Pages/PublicAccess.aspx (last visited 3/18/21).  Still, one commentator observed, "With the exception of Lake Erie, there are no navigable lakes and ponds bordering on or within the boundaries of the Commonwealth."  J.D. Lynch, *Riparian Title in Pennsylvania*, 41 Pa. B. Ass'n Q. 224, 231 (1970).

[2] *See* Longs' Ex. 2 at 775-81; Lackawanna County Deed Book 343 at 519; Lackawanna County Deed Book 154 at 550-52; Lackawanna County Deed Book 124 at 522-23.

That the value of said land, water, or property so taken or occupied, or to be taken or occupied . . . and [the water company] having filed a map and a disclaimer of any interest to raise the water of said lake more than four (4) feet, or of depriving [the Lees] of the use of the water of the said lake for all the uses for which it has been used in the past by [the Lees] (said map and release being attached hereto and made part of this report), and after having made a fair and just comparison of said advantages and disadvantages they estimate and determine that the [Lees] have sustained damages including the taking and occupying of the land and water as above stated to the amount of [$580], and the same shall be paid to [the Lees].

Provided the disclaimer hereinbefore mentioned be placed on record & remain in full force and virtue.

***Lee v. The Jermyn & Rush Brook Water Co.***, 422 CV Sept. Term (C.C.P. Lackawanna 1895), Report of the Board of Viewers at 1-3.

The water company and the Lees resolved their lawsuit with a cash payment of $580, as set by the Board of Viewers, and the water company granting the Lees and their successors the use of the lake. The Settlement and Release in that action provided:

that the Jermyn and Rush Brook Water Company . . . doth hereby release, remise, and forever quit claim to [the Lees], their heirs, and assigns all and all manner of interest in and to all land outside of that portion that will be taken and flowed (of the lands of [the Lees]) by reasons of raising the outlet of Chapman Lake . . . and do further disclaim any intention of depriving the owners of said land or their heirs or assigns of access to the water of said Chapman Lake where it adjoins the said lands, or of free and uninterrupted use of said water for the stock and other uses thereof in connection with said farm as riparian owners of said land and water, and do give and grant unto [the Lees] the right to take water from said lake if it recedes or is drawn below the line of low water mark and to have the use of the same

- 4 -

> as riparian owner and to fish in the water over the land taken from said plaintiffs.

*Lee*, *supra*, Water Company's Release at 1; *see also* Longs' Ex. 2 at 1038; Lackawanna County Deed Book 167 at 385.

The Recorder of Deeds of Lackawanna County recorded the 1895 Board of Viewers Report and related court documents (including the Release and Settlement) into the chain of title for the parcels beneath Chapman Lake.[3]

"Chapman Lake was owned by various public utilities from 1896 to 1999, and [they] held [the waters] as a back-up, fresh-drinking-water source." *Associates at Chapman Lake v. Gerchman*, 10 CV 391, 7/24/2003 Opinion at 2 (C.C.P. Lackawanna 2003); The Associates' Ex. 5. Over that same period, the owners of the various farmsteads around the lake began subdividing and selling their land to many other owners.

The former Commissioner of Lackawanna County, Robert Pettinato, testified that his family began renting a summer cottage at Chapman Lake in the late 1940s or early 50s, when he was about ten years old. *See* N.T., 10/24/2018, at 8. In March of 1954, his parents and great uncle purchased a lakefront tract of land in one of Chapman Lake's subdivisions. *See* N.T., 10/24/2018, at 9. Thereafter, the Pettinato family spent every summer (from May until Labor Day) at the lake. *Id.* at 21, 24-25. The Pettinatos could trace their chain of title for the land to the Lee Farm and the condemnation action.

---

[3] *See* Longs' Ex. 2 at 1039-42; Lackawanna County Deed Book 167 at 386-88.

*See* Longs' Ex. 1. The Pettinatos immediately built a duplex cottage on the land, installed a dock on the lake, and built a patio area near the dock. N.T., 10/24/2018, at 11-12. Commissioner Pettinato recalled that "the dock was modified many times," because it "was damaged almost annually by the ice formations and had to be rebuilt on occasion." N.T., 10/24/2018, at 12. "And when it was being rebuilt, often it was enlarged and -- we were always working on that dock." *Id.*

According to Commissioner Pettinato, Chapman Lake was the heart and soul of the property. The lake "was the reason for being. Everything that we did at Chapman Lake revolved around the lake." *Id.* at 20. Each summer, he and members of his family used the lake daily for swimming, fishing, or boating. *Id.* at 21-22.

In 1974, the Pettinato family deeded their Chapman Lake property to their family-owned corporations: Gerard & Pettinato Construction Co., Inc. and The North End Lumber Co. *See id.* at 18. The Pettinatos continued to visit their cottage each summer and to use the lake for recreation. In 2007, the Pettinatos' companies sold the land to Eugene Long, who eventually reconveyed it to his wife and himself. *See id.* at 19.

As a child and teenager, Mr. Long regularly visited Chapman Lake in the 1980s. *See* N.T., 11/7/2018, at 49. He was friends with people who owned homes at the lake. Since childhood, he continually used the lake in the summers to jet ski, water ski, swim, and boat. *See id.* In the past he would fish the lake, and other members of his family and his guests have continued

that use. The Pettinatos' dock was present when Mr. Long bought the land, and the dock has remained there since.

One of Mr. Long's neighbors, Ken Srebro, has lived at Chapman Lake since buying property there in 1992. *See* N.T., 3/27/2019, at 13. From 1992 until 2007, he used the lake for swimming, boating, water skiing, snorkeling, scuba diving, and fishing. *See id.* at 14. Like the Pettinatos and Longs, he also had a dock on Chapman Lake. Furthermore, Mr. Srebro agreed that "all of the other adjourning property owners on the lake were also using the lake during that period of time for the same [*i.e.*, recreational] purposes." *Id.* at 15. During this time, Mr. Srebro paid no fee to anyone for the use of the lake. *See id.* at 18. His recreational uses prompted the objections of Theta Land Corporation, which had purchased the land under Chapman Lake in 1999. *See id.* at 16; *see also* Longs' Ex. 2 at 202-765; Lackawanna Deed Book 167 at 2-565.

John Matines also objected to Mr. Srebro's use of the lake, even though he never owned it. Mr. Matines "was a guy [who] was going to buy the lake from Theta [Land] Corporation and sell it to" Mr. Srebro and six other Chapman Lake residents. *Id.* at 17.

On December 14, 2007, to acquire Chapman Lake, Mr. Srebro and his six neighbors formed and became sole shareholders of The Associates of Chapman Lake, Inc. They originally incorporated as a non-profit. Two months before its formation, The Associates of Chapman Lake, Inc. received title to most of the lands beneath Chapman Lake in an October 23, 2007 deed from

Lackawanna County. *See* Longs' Ex. 2 at 10-14. The Associates acquired the rest of the submerged property from Theta Land Corporation on July 9, 2012. *See id.* at 5-7. They then began charging the approximately 300 residences around Chapman Lake an annual assessment of $100 to use the lake. N.T., 3/27/2019, at 20; *see also* N.T., 11/7/2018, at 50. This was the first time in the history of Chapman Lake someone had assessed a recreational-use fee to access its waters. The Longs refused to pay the Associates' new fee.

In July of 2008, the Associates began leasing the oil and natural gas rights beneath Chapman Lake to Exco Northcoast Energy, Inc. *See* N.T., 3/27/2019, at 20, 22. The Associates at Chapman Lake, Inc. reincorporated as a for-profit entity, so it could payout that rent as dividends to the seven shareholders. *See id.* at 23. Each of the shareholders also received and recorded deeds from The Associates of Chapman Lake, Inc. granting their residential properties easements to use Chapman Lake for recreational purposes. *See id.* at 24.

Aside from the Longs, two other families opposed the Associates' annual fees — the Gerchmans and the Cliffs. The Associates won legal cases against both families and have thereafter refused to let either family use the lake at any price. *See id.* 28-29.

The Associates also sued the Longs for trespassing on the lake.

## II. Procedural Posture

The Associates initiated this action in the magisterial district court, and the case moved to the court of common pleas on May 13, 2014. That court

- 8 -

docketed the first case at 2014-CV-2781. The Associates filed a Complaint two weeks later and a Second Amended Complaint the following summer. The Longs also filed their own Complaint against the Associates at trial-court docket number 2014-CV-4971.

The Associates alleged that the "Longs have placed docks in the Lake and have continued to use the Lake for recreational purposes since 2008 without paying [the $100] fee." Associates' Second Amended Complaint at 2. The Associates asked the trial court to order the Longs to remove their dock, to stop using the lake, and to pay $700 plus interest. *See id.*

The Longs eventually filed a Second Amended Complaint of their own on September 19, 2018. They had two counts in that filing: quiet title and declaratory judgment. In both counts, the Longs sought identical relief – namely, a declaration quieting title for themselves, their tenants, guests, and invitees "to use Chapman Lake for fishing, boating, swimming, and other recreational purposes by virtue of the [1895] Condemnation Documents." Longs' Second Amended Complaint at 11-12. In the alternative, they sought that same right through a declaration that they, their tenants, guests, and invitees acquired a prescriptive easement to use the waters of Chapman Lake for the same purposes. *See id.* In either event, the Longs sought a permanent injunction to prevent the Associates from interfering with their use of the lake and from attempting to charge them a fee to use the lake.

Although never officially consolidated below, the two cases proceeded simultaneously to a bench trial. The court rendered a decision and enjoined

the Longs "from using Chapman Lake for recreational purposes and from otherwise trespassing on the property of Associates." Trial Court Order, 6/21/2019, at 1. The Longs filed a post-trial motion seeking judgment as a matter of law, which the trial court denied.

These two timely appeals followed.[4] This Court consolidated them.

### III. Analysis

The Longs raise five appellate issues. However, we limit our review to only the first issue, because our disposition of it renders the other four issues moot.[5] That issue is:

> Whether the [trial court erroneously] held that the documents filed in the Condemnation Action created an easement to use the waters of Chapman Lake for "farm uses" only and by ignoring other provisions in the Condemnation Documents . . . expressly granted riparian rights to the Lee heirs and their successors and assigns?

The Longs' Brief at 6.

---

[4] Upon receiving the Longs' appeals, this Court issued a rule to show cause as to whether it should quash them under **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (dictating that appellants must file separate notices of appeal for each docket number in order to vest jurisdiction in an appellate court). The Longs filed an answer to the rule, and the Court deferred the jurisdictional question to this panel. Based upon the response of the Longs to the rule and our review of the records, the Longs did not violate **Walker**. They have perfected our appellate jurisdiction. Any misstep below was the result of the accidental fling errors of the Prothonotary of Lackawanna County.

[5] The other four issues focus on the trial court's conclusion that the Pettinatos did not acquire a prescriptive easement to use of the waters of Chapman Lake. **See** Longs' Brief at 6-8.

- 10 -

The trial court refused to quiet a usufructuary title[6] in the Longs to, in, and upon the waters of Chapman Lake for recreation. That court determined that the condemnation case of **Lee v. The Jermyn & Rush Brook Water Co.**, 422 CV Sept. Term (C.C.P. Lackawanna 1895), only established a usufructuary title in the Lees and their successors for agricultural uses of the lake, rather than all conceivable uses to which water might be put. Thus, while the trial court agreed with the Longs that the Lees and their successors acquired a usufructuary title, the trial court disagreed with the Longs as to the title's scope.

This issue requires us to interpret and apply the Settlement and Release in **Lee**, **supra**, various precedents of the trial court, and the common and statutory law of property. All these matters raise pure questions of law. "Accordingly, our standard of review is *de novo*, and our scope of review is plenary." **MERSCORP, Inc. v. Delaware County**, 207 A.3d 855, 861 (Pa. 2019); **see also Russo v. Polidoro**, 176 A.3d 326, 329 (Pa. Super. 2017).

As mentioned, the parties agree that Chapman Lake is non-navigable. Regarding "a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of

---

[6] Usufructuary (adj.) – "1: one having the usufruct of property; 2: one having the use or enjoyment of something." MERRIAM-WEBSTER ONLINE DICTIONARY, available at https://www.merriam-webster.com/dictionary/usufructuary (last visited 3/20/2021).

another." ***Miller v. Lutheran Conf. & Camp Ass'n***, 200 A. 646, 650 (Pa. 1938). Still, water rights "are property that may be a subject of a contractual or conveyance instrument. Landowners in possession of such riparian rights are generally at liberty to sell the land and retain the rights, or vice versa." Mark Cheung, *Dockominiums: An Expansion of Riparian Rights that Violates the Public Trust Doctrine*, 16 B.C. Envtl. Aff. L. Rev. 821 at 840-41 (1989). ***See also Miller***, 200 A. at 648-50, (holding grantee acquired usufructuary title to boat and to fish in the grantor's private lake through a deed).

Here, in rejecting the Longs' argument that the 1895 release in ***Lee***, ***supra***, granted them all recreational uses of Chapman Lake, the trial court primarily relied upon its prior holding in ***Cliff v. Associates of Chapman Lake, Inc.***, 2015-CV-99 (C.C.P. Lackawanna 2017).[7] According to the trial court, ***Cliff*** "dealt with a nearly identical issue, and [the common pleas court] rejected the proposition that the Condemnation Documents grant riparian rights prayed for by the Longs." Trial Court Opinion, 6/21/2019, at 3. ***Cliff*** "concluded the Condemnation Documents created an easement to use the waters of the lake for 'farm uses' only. The same applies in this case." ***Id.***

---

[7] This Court issued a memorandum decision affirming on February 1, 2019. ***Cliff v. Associates of Chapman Lake, Inc.***, 223 MDA 2018 (Pa. Super 2019) (unpublished) ("***Cliff*** II"). Under Pennsylvania Rule of Appellate Procedure 126(b), only Superior Court memoranda decisions filed after May 1, 2019 may be relied upon as persuasive precedent. Therefore, ***Cliff*** II has no persuasive value in this Court or the courts of common pleas. ***See*** Pa.R.A.P. 126(b)(2) (limiting persuasive value to Superior Court memoranda filed after May 1, 2019).

"As a preliminary matter, trial court decisions are not binding upon the Superior Court." *Echeverria v. Holley*, 142 A.3d 29, 36 n.2 (Pa. Super. 2016). *Cliff* is a trial court precedent and has no binding effect on appeal. Additionally, judicial *dictum* is an "opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision." BLACK'S LAW DICTIONARY at 465 (7th ed. 1999).

Like the Longs, the Cliffs refused to pay the Associates' $100 fee to use Chapman Lake. However, unlike the Longs, the Cliffs could not trace their chain of title to the Lee Farm. The trial court in *Cliff* found that the facts of that case were as follows:

> in the 1800s and 1900s, the Lee Farm and the Finch Farm were two properties which existed just to the west of Chapman Lake. After the Lee Farm was condemned in 1895, the [water company] granted the Lees certain rights to use the waters of the lake. [The Cliffs] allege that their land derives in part from the Lee Farm, which thereby grants them the rights granted to the Lees by said water company. However, at the bench trial . . . Title Searcher David Durkovic . . . stated that [the Cliffs'] property was from the Finch Farm, and not the Lee Farm.
>
> . . . As the [Cliffs] were unable to show that they derive rights, including an easement to use the water of Chapman Lake, from the Lee Farm . . . the Cliffs' property is not in the Lee Farm chain of title.

*Cliff*, 2015-CV-99, December 29, 2017 Decision and Decree at 2 (some capitalization omitted).

- 13 -

This factual finding rendered the breadth of the usufructuary title conveyed in **Lee**, **supra**, moot in **Cliff**, because the Cliffs could not claim any rights under the Lees' chain of title. Notwithstanding that mootness, the **Cliff** Court went on to opine that the water company "unambiguously limited the [Lees'] use of the . . . waters of the lake for uses connected to the farm, such as using water for livestock." **Cliff**, December 29, 2017 Decision and Decree at 2. Because this opinion on the water company's conveyance to the Lees was unessential to decide **Cliff**, the **Cliff** trial court's views on the conveyance was *dictum*.

"The doctrine of '*stare decisis*' is limited to actual determinations in respect to litigated and necessarily decided questions and is not applicable to *dicta* or *obiter dicta*. Thus, a *dictum* is not binding authority and has no precedential value." 1 Standard Pa. Practice 2d § 2:252 (citing **In re L.J.**, 79 A.3d 1073 (Pa. 2013); **O'Neill v. Metropolitan Life Ins. Co.**, 26 A.2d 898, (Pa. 1942); **In re Cassell's Estate**, 6 A.2d 60 (Pa. 1939); **City of Lower Burrell v. City of Lower Burrell Wage and Policy Committee**, 795 A.2d 432 (Pa. Cmwlth. 2002)). The trial court therefore erred by relying upon the *dictum* from **Cliff** in the instant matter.

On appeal, the Associates make the same error as the trial court. They rely upon the trial court's *dictum* from **Cliff** and the unpublished memorandum of this Court affirming **Cliff**. **See** Associates' Brief at 10-11. That reliance is misplaced, because neither of those authorities are precedential. **See Echeverria**, **supra**; **see also** Note 7, **supra**.

- 14 -

Next, the Associates claim the language of the **Lee** documents "clearly qualifies and limits the use of water." Associates Brief at 11. They believe that, because a condemnation document states, "all uses for which [the lake] had been used in the past by the [Lees]," the Longs needed to prove the Lees used the lake for recreational purposes before the Lees sued the water company. **Id.** (quoting **Lee**, Report of the Board of Viewers at 2).

This argument does not float. The Associates quote the Report of the Board of Viewers, but that was **not** the conveyance. A representative of the water company did not sign the Report of the Board of Viewers. The court-appointed Viewers signed that document.

Under the Statute of Frauds, conveyances of real property must be a writing that bears "the signature **of the grantor**." **Nolt v. TS Calkins & Assocs., LP**, 96 A.3d 1042, 1047 (Pa. Super. 2014) (emphasis added). Thus, the Report of the Board of Viewers is not a conveyance of the water company's interests in Chapman Lake. Instead, the release is the conveyance.

The release itself determines the scope of the usufructuary title that it grants. Our review is confined to the four corners of the release, because the meaning of a conveyance is "gleaned solely from **its** language." **Teacher v. Kijurina**, 76 A.2d 197, 200 (Pa. 1950) (emphasis added). As the Associates observe, "effect must be given to all the language of **the instrument** and no part shall be rejected if it can be given meaning." Associates' Brief at 12 (quoting **Brookbank v. Benedum-Trees Oil Co.**, 131 A.2d 103, 107 (Pa. 1957)) (emphasis added).

- 15 -

We therefore turn to the language of the instrument in which the water company granted the Lees the usufructuary title at issue. The water company wrote and two of its officers signed the following:

> that the Jermyn and Rush Brook Water Company . . . doth hereby release, remise, and forever quit claim to [the Lees] their heirs and assigns all and all manner of interest in and to all land outside of that portion that will be taken and flowed (of the lands of said plaintiffs) by reasons of raising the outlet of Chapman Lake . . . and do further disclaim any intention of depriving the owners of said land or their heirs or assigns of access to the water of said Chapman Lake where it adjoins the said lands, or of free and uninterrupted use of said water for the stock and other uses thereof in connection with said farm as riparian owners of said land and water, and do give and grant unto [the Lees] the right to take water from said lake if it recedes or is drawn below the line of low water mark **and to have the use of the same _as riparian owner_** and to fish in the water over the land taken from said plaintiffs.

**Lee**, **supra**, Water Company's Release at 1; **see also** Longs' Ex. 2 at 1038; Lackawanna County Deed Book 167 at 385 (emphasis added).

The Associates would have us focus on every clause other than the one highlighted above. However, doing so, would violate **Brookbank**, **supra**, wherein the Supreme Court of Pennsylvania directed courts to give effect to all the language of an instrument, if possible. If we limited the instrument to only agricultural uses – as the Associates suggest and as the trial court did – then the clause granting the Lees and their successors "the use of the same [*i.e.*, the waters of Chapman Lake] as riparian owner" would have no effect. Such an interpretation confers only the specific uses granted elsewhere in the

conveyance and essentially removes the general-use-as-riparian-owner clause from the Settlement and Release. This contradicts **Brookbank**.

The Associates would have us construe the conveyance as narrowly as possible, but they produced no evidence as to why that narrowest reading should prevail. Moreover, the plain language of the use-as-riparian-owner clause is not narrow.

The classic example of narrow conveyance of water rights appears in **Miller v. Lutheran Conf. Camp**, **supra**. There, the grantor-corporation expressly limited the grant in its deed "to boat and fish the water" that the corporation owned. **Miller**, 200 A. at 648. This was a specific, clearly limited grant of water rights. Miller could do two things under his deed – boat and fish.

In the matter at bar, had the water company desired to grant the Lees the right to use the water of the lake for their "farm use only," as the trial court concluded, the water company could have done so by using this limiting language in the Settlement and Release. For example, the water company could have written that it "gives and grants unto the Lees the right to use the waters of the lake for farm uses only." That is not what the water company wrote. It conveyed much more than that to the Lees, namely, "the use of [the waters of Chapman Lake] as riparian owners." **Lee**, **supra**, Water Company's Release at 1; **see also** Longs' Ex. 2 at 1038; Lackawanna County Deed Book 167 at 385. This language is the broadest grant of water rights possible under Pennsylvania common law. The use of water "as a riparian

owner" of non-navigable waters, such a Chapman Lake, is the use of those waters as if the grantee were a private owner of those waters. *See Vill. of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814 at 820 (Pa. Super. 2014).

Construing that clause as the Longs assert, by its plain and natural language, we hold that this broad, general language granted the Lees and their successors all the same uses as if they owned the waters of Chapman Lake ("as riparian owners" of the waters). This interpretation gives the clause its natural meaning and its full force and effect, while the other more specific clauses concerning livestock, taking water for domestic use, and fishing likewise remain in effect.

Additionally, we that, "if doubt arises concerning the interpretation of the instrument, it will be resolved *against* the party who prepared it . . ." *Brookbank*, 131 A.2d at 107 n.6 (emphasis added). The water company prepared the release. Thus, we resolve any doubt against the water company and its successors in interest – the Associates. The trial court therefore erred by not interpreting the general clause that gives the Lees use of the lake as riparian owners, according to its plain meaning and by not construing it against the Associates, *i.e.*, the drafter's successors in interest.

We therefore hold that, under the Settlement and Release, recorded in Lackawanna County Deed Book 167 at 385, the Lees and their successors in title to the Lee Farm acquired usufructuary title to an easement. This easement grants them access to, in, and upon the waters of Chapman Lake

as if they themselves were, are, and will hereafter be "riparian owners" of the lake.

We must next decide what type of easement the Lees' chain of title acquired. "In determining whether a certain easement in connection with water is appurtenant or in gross, the nature of the right, the surrounding circumstances, and the intention of the parties creating it are to be considered." George Thompson, COMMENTARIES ON REAL PROPERTY § 264 at 363-64 (1980 ed.) (citing ***Lindenmuth v. Safe Harbor Water Power Corp.***, 163 A. 159 (Pa. 1932)).

The water company granted this easement to the Lees and their successors in conjunction with the company's condemnation of five acres of the Lees' land. The water company received a deeper reserve of drinking water in exchange for giving the Lees and their successors the right to use Chapman Lake as if co-owners of its waters. This quasi-co-ownership served as part of the Lees' compensation for the water company's taking. Thus, the easement is tied to and runs with the Lees' land, for the benefit of the Lees and all successors to their lands. The easement created in the release is an easement appurtenant, rather than an easement in gross.

Finally, we agree with the Longs that this easement appurtenant flowed down to them, as a matter of law. ***See*** Longs' Brief at 34. Our legislature has dictated, "All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all . . .

hereditaments, and appurtenances whatsoever . . ." that belong to the land. 21 P.S. § 3. The usufructuary title in question was for an incorporeal hereditament, *i.e.*, an easement appurtenant to the land conveyed from the Lees. No prior owner in the Longs' chain of title expressly reserved that easement appurtenant. **See** Longs' Ex. 1. Hence, the easement appurtenant to use all waters Chapman Lake, as riparian owners, vested in the Longs.

In sum, the trial court erred, as a matter law, by not reversing its decision and decree in these cases. It should have granted the Longs' motion for post-trial relief in its entirety. We vacate the order denying post-trial relief and remand for the entry of an order awarding quiet, usufructuary title to the Longs, their heirs, and assigns for an easement appurtenant to, in, and upon the servient waters of Chapman Lake, including for all recreational uses thereof. The trial court shall enter a permanent injunction against the Associates and their successors. That injunction shall prohibit the Associates and their successors from interfering with the Longs' quiet use and enjoyment of the water of Chapman Lake, and from assessing the Longs or their successors a fee to use its water. Similarly, the trial court shall award judgment to the Longs in the action that the Associates filed. The Longs' dock and recreational uses of Chapman Lake are not trespasses; they are within the scope of the easement created in the 1895 release.

Judgments and order denying post-trial relief vacated. Case remanded for further proceedings consistent with this Opinion.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/22/2021