J-A09020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SCOTT S. MARTIN AND JANEL G. MARTIN, HUSBAND AND WIFE, AND DAVID C. BALSEGA AND MICHELLE M. BALSEGA, HUSBAND AND WIFE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| LUTHER BURCHINAL, A/K/A L.W. BURCHINAL AND EMMA BURCHINAL, HUSBAND AND WIFE; AND JOSEPH G. BURCHINAL AND SARAH ELIZABETH BURCHINAL, HUSBAND AND WIFE; THEIR HEIRS; SUCCESSORS AND ASSIGNS; AND LAWRENCE KRUPA; AND LAWRENCE L. KRUPA;  LAWRENCE L. KRUPA, JR.; BRIAN J. KRUPA; AND MARK A. KRUPA | : : : : : : : : : : : : : | |
| APPEAL OF:  LAWRENCE L.  KRUPA, LAWRENCE L. KRUPA, JR., BRIAN J. KRUPA, AND MARK A. KRUPA | : : : | No. 929 WDA 2020 |

Appeal from the Judgment Entered August 24, 2020
In the Court of Common Pleas of Fayette County Civil Division
at No(s):  406 of 2016, G.D.

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.*

MEMORANDUM BY KUNSELMAN, J.:         **FILED: NOVEMBER 22, 2021**

## I.    Introduction

Intervening Defendants, Lawrence L. Krupa and his sons (Lawrence, Brian, and Mark), appeal from the judgment quieting title to a 50-by-227.7-foot strip of land in Smithfield, Pennsylvania.   Plaintiffs, Scott and Janel Martin and David and Michelle Balsega, are next-door neighbors; the strip of

_____

* Retired Senior Judge assigned to the Superior Court.

land in question (hereafter, "Redacre"),[1] runs between their homes and connects with a portion of the Krupa Farm. The trial court determined the Martins and Balsegas each acquired half of Redacre by adverse possession and that the Krupas have no right of way through this parcel. For the reasons that follow, we reverse the grant of quiet title and dismiss the Krupas' issues regarding a potential easement through Redacre as waived.

## II. Factual & Procedural Background

The Krupa family has owned a farm in Smithfield Township since, at least, 1970. They presented many witnesses who testified to using Redacre to enter and leave the Krupa Farm and to access a drainage ditch that runs through the Balsegas' property, Redacre, and a paper alley behind the Martins' property. The trial court found that testimony of use credible. **See** Trial Court Opinion and Order, 6/24/20, at 27. The Balsegas have lived near the Krupa Farm since the 1980s, and the Martins arrived in 1998. Discord began between the Martins and Krupas shortly thereafter. The trial transcript is replete with testimony of their negative interactions, none of which is pertinent to this case.[2]

_____

[1] The parties, witnesses, and trial court referred to the strip of land by various names, including the property, the alleyway, the street, and the right-of-way. For simplicity sake, we call it "Redacre," because it is red on Martin/Balsega Ex. 19 at 9. **See** this Memorandum at 6.

[2] We do not view the actions of Lawrence Krupa, Sr. against the Martins as acceptable conduct. But other areas of the law – such as torts or the Crimes
*(Footnote Continued Next Page)*

In response to the Martins' ongoing disagreements with the Krupas, the Martins and Balsegas filed this action on February 29, 2016 – *i.e.*, 18 years after the Martins' purchased their home and over 30 years after the Balsegas purchased theirs.  Although the Martins and Balsegas clearly sued to prevent the Krupas from using Redacre, they did not sue the Krupas.

Instead, they sued the owners of the farm from the 1880s, *i.e.*, Luther, Emma, Joseph, and Sarah Burchinal, along with their heirs, successors, and assigns, for title to Redacre.  Because the Burchinals died nearly 100 years ago, the trial court permitted service by publication in a local newspaper.  The Krupas intervened to challenge the Plaintiffs' claims of adverse possession.

The parties agree the relevant history of Redacre begins in the mid-19th century.  At that time, Luther W. and Emma Burchinal owned Redcare and the parties' properties within the boundaries of their farm.  **See** Complaint at 2, ¶5; **see also** Answer and New Matter at 3, ¶5.

Luther and Emma went bankrupt in the 1880s.  During the bankruptcy proceedings, on August 8, 1887, Luther and Emma deeded the Burchinal Farm to Joseph G. Burchinal.  **See** Fayette County Deed Book No. 81 at 386; **see also** Martin/Balsegas' Ex. 19 at 11; **see also** Krupas' Ex. M.  Four months later, in December of 1887, Joseph recorded the "Plan of East

*(Footnote Continued)* ————————————

Code – govern that.  However distasteful his acts may be, they do not dictate who owns Redacre.

Smithfield," which established 48 lots in the southern corner of the Burchinal Farm. *See id.* at 2. Joseph did not parcel out Redacre in the 1887 Plan.[3]

Then, on September 10, 1888, Joseph executed two deeds. The first deed granted most of the Burchinal Farm to Martha Sturgis. The second deed conveyed a smaller portion of the farm to Owing McCleary. Neither deed conveyed Redacre. However, the Burchinal-to-McCleary Deed referred to McCleary's property as "bound by street leading to residence of P.G. Sturgis" and "situated on Liberty Street, north of Lot No. 15, and separated therefrom by a fifty (50) foot St. leading to said Sturgis residence . . . ." Fayette County Deed Book No. 78 at 340; *see also* Krupas' Ex. W. This unconveyed area, identified as a "50-foot street leading to" the Sturgis Farm (*i.e.*, the present-day Krupa Farm), is Redacre.

Using the 1887 Plan, a title searcher created a demonstrative exhibit which shows the current properties in different colors – the Balsega property

---

[3] The trial court stated that "the parties stipulated to the authenticity, but did not admit into evidence, the Krupas' pre-marked Exhibits A through LL and NN through OO." Trial Court Opinion and Order, 6/24/20, at 4 (citing N.T., 8/10/18, at 2). This was incorrect. The Krupas moved for the admission of the stipulated exhibits on August 10, 2018, and there was no objection. *See* N.T., 8/10/18, at 27-28. The trial court did not officially announce the exhibits' admission, but we will regard as done that which ought to have been done. *See, e.g., Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514-15 (Pa. Super. 1995) (stating that appellate courts may "regard as done that which ought to have been done" to excuse breakdowns in the court system) (citations omitted). Accordingly, the exhibits are of record and within our scope of review.

is green, Redacre is red, the Martin property is yellow, and the western edge

of the Krupa Farm is blue.[4]  The demonstrative exhibit appears below:



---

[4] The pink area above the Balsega property is unrelated homes.

Martin/Balsega Ex. 19 at 9.

The Martins and Balsegas claim that, once Joseph Burchinal recorded the 1888 Burchinal-to-McCleary Deed declaring Redacre a "street," he neglected to convey Redacre further. *See* Complaint at 2-3, ¶6. They assert that he subsequently willed "his entire estate to his wife, Sarah Elizabeth Burchinal." *Id.* (citing Fayette County Will Book No. 10 at 270). "There is no record of [Sarah's] death in the official records of Fayette County, but there is a grave marker in Smithfield believed to be hers that states that she died on May 30, 1926. She left no known heirs nor any recorded estate." *Id.* The Martins and Balsegas therefore assert that "Sarah Elizabeth Burchinal died owning [Redacre,] and the chain of title stops there." *Id.* For this reason, they named only the Burchinals and their heirs in this adverse-possession action.

The Krupas disagree that the chain of title to Redacre ended with Mrs. Burchinal. *See* Answer and New Matter at 3, ¶ 6. They claim that at some point title passed to M. Everett Clemmer. A recorded deed from 1921 conveys Redacre from Amanda and Jeremiah S. Larman to Mr. Clemmer. *See* Fayette County Deed Book No. 432 at 100; *see also* Krupas' Ex. G. That 1921 Deed granted Mr. Clemmer "ALL that certain lot or parcel of ground, situate on the eastern side of Liberty Street in [Smithfield] Borough, fronting fifty (50) feet thereon and extending back in an eastwardly direction one-hundred-eighty-four (184) feet to an alley, being of uniform width of

fifty (50) feet." *Id.* It "is bounded on the southern side thereof by Lot No. 15." *Id.*

This 1921 Deed specifically corrects two prior deeds, a 1914 deed from Mr. Clemmer to Mollie L. Benson, and a 1918 deed from Ms. Benson to the Larmans. The 1914 and 1918 Deeds are not of record, and there is no other evidence of title to Redacre between 1888 and 1924.

According to the 1921 Deed, the 1914 and 1918 Deeds mistakenly failed to acknowledge that Redacre was designated to serve as a means of access to the properties behind it. The 1921 Deed provides that Redacre was:

> intended by [Mr. Clemmer] to be known and used as a public highway or street; the purpose of this deed is to correct the error in two deeds above cited [*i.e.*, the 1914 and 1918 Deeds], wherein and whereby the said lot was described and conveyed as a lot or parcel of ground, and not as a highway or street; [and Mr. Clemmer], in accepting title to said lot by this deed of conveyance, covenants with [the Larmans], their heirs and assigns, that the same shall be used as a highway or street, and hereby dedicates the same as a public highway or street, adjoining [the present-day Martin property] on the southern side and [the present-day Balsega property] on the northern side.

*Id.*

Thus, in 1921, the Larmans purported to return Redacre to Mr. Clemmer for the express purpose of dedicating it as a public street. Based upon this conveyance, the Krupas argued that Redacre is either a public or

- 7 -

private street for accessing their farm, and that the Martins and Balsegas should therefore be denied quiet title to the property.

Following a non-jury trial, the common pleas court ruled in favor of the Martins and Balsegas. It found that Sarah Burchinal died owning Redacre, and that the Martins and Balsegas proved their claim of adverse possession against the Burchinals. Next, the court partitioned Redacre between the Martins and Balsegas.[5] It barred the Krupas and the Burchinals, their heirs, successors, and assigns "from asserting any right, lien, title, or interest in [Redacre]." Trial Court Opinion and Order, 6/24/20, at 31-32.

The Krupas moved for post-trial relief. Their filing included a request to dismiss the Complaint due to lack of subject-matter jurisdiction, because the Martins and Balsegas failed to join Mr. Clemmer, his heirs, successors, and assigns as indispensable parties. *See* Krupas' Post-Trial Motion at 5. The trial court denied relief without discussing the jurisdictional issue, and this timely appeal followed.

### III. Analysis

The Krupas allege six errors on appeal, which we have reordered for ease of disposition. The Krupas' claims of error are as follows:

_____

[5] Specifically, the trial court divided Redacre and awarded the Martins title to the 25-foot-wide southeastern half and the Balsegas title to the 25-foot-wide northwestern half.

1. Did the trial court err in failing to dismiss the instant action due to [the Martins' and Balsegas'] failure to name an indispensable party?

2. Did the trial court err in finding that [the Martins] were entitled to "tacking" when there was no evidence that their predecessors-in-title claimed title to [Redacre] or that their predecessors intended to convey more land than what was described in the deed to the Martins?

3. Did the trial court err in finding that [the Martins and Balsegas] adversely possessed [Redacre] when the [their] possession was not exclusive or hostile?

4. Did the trial court err in failing to recognize an easement created by a recorded plan and/or deed in favor of the [Krupas]?

5. Did the trial court err in failing to recognize a private easement in favor of the [Krupas]?

6. Did the trial court err in failing to recognize a prescriptive easement in favor of the [Krupas]?

Krupas' Brief at 5.

*A.     Nonjoinder of an Indispensable Party*

We begin with the Krupas' jurisdictional issue, because "A judgment is void if the issuing court lacked jurisdiction of the subject matter . . . ." ***Domus, Inc. v. Signature Bldg. Sys. of PA, LLC***, 252 A.3d 628, 640 (Pa. 2021).

The Krupas assert that, in the 1921 Deed, M. Everrett Clemmer claimed title to Redacre approximately 35 years after the Burchinals owned it. They therefore believe that the Martins and Balsegas needed to join him,

his heirs, successors, and assigns as indispensable parties. In the Krupas' view, their nonjoinder is fatal to the trial court's jurisdiction.

"The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject-matter jurisdiction." **Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.**, 210 A.3d 1064, 1069 (Pa. Super. 2019). "Whether a court has subject-matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*." **In re Administrative Order No. 1–MD–2003**, 936 A.2d 1, 5 (Pa. 2007). "Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth." **Id.**

Whether a court has subject-matter jurisdiction is a pure question of law. Thus, "the standard of review . . . is *de novo*, and the scope of review is plenary." **Mazur v. Trinity Area Sch. Dist.**, 961 A.2d 96, 101 (Pa. 2008).

"This Court has held that in a quiet-title action, **all parties who claimed title to the property** at issue must be joined as indispensable parties." **Orman v. Mortg. I.T.**, 118 A.3d 403, 407 (Pa. Super. 2015) (emphasis added). In raising the issue of the trial court's jurisdiction, the Krupas produced the 1921 Deed. By recording this deed, Mr. Clemmer **claimed** title to Redacre.

We review the 1921 Deed solely to resolve the jurisdictional issue. Nothing in the record reflects that the Larmans had title to Redacre when

they executed the 1921 Deed. In other words, the 1921 Deed is a wild deed, *i.e.*, "A recorded deed that is not in the chain of title, usually because a previous instrument connected to the chain of title has not been recorded." BLACK'S LAW DICTIONARY at 504 (10th ed. 2014). We do not determine whether the 1921 Deed actually gave anyone title or a usufructuary[6] right to Redacre.

Under the plain language of the 1921 Deed, Mr. Clemmer dedicated Redacre as a public road. In Pennsylvania, "a street becomes public when it is (1) dedicated to public use and (2) accepted by the municipality." ***Murphy v. Martini***, 884 A.2d 262, 265 (Pa. Super. 2005) (quotation omitted). "If the street is not accepted within 21 years, 'the land is discharged from such servitude, and the dedicated portion of it has entirely lost its character as a public street.'" ***Id.***, *quoting* ***Rahn v. Hess***, 106 A.2d 461, 463-464 (Pa. 1954).

Here, no evidence indicates that Smithfield Township ever accepted Redacre as a public street.[7] Thus, after 21 years, Mr. Clemmer's dedication

---

[6] "Usufructuary (adj.) – 1: one having the usufruct of property; 2: one having the use or enjoyment of something." ***Assocs. of Chapman Lake v. Long***, 253 A.3d 1210, 1216 (Pa. Super. 2021) n.6 (citation omitted).

[7] We note that the Krupas contend the public impliedly accepted Redacre as a public road via repeated use. ***See*** Krupas' Brief at 35. However, they point to no evidence of record that this implied acceptance by the public at large occurred within 21 years of the 1921 Deed. Thus, their contention of implied acceptance fails.

would have lapsed. *See* 36 P.S. § 1961. Title would not have reverted to Mr. Clemmer, because he did not expressly or impliedly reserve title to himself in the event the street was not accepted. Instead, title to the center line of Redacre would have passed to the adjacent property owners, here the predecessors-in-interest to the Martins and the Balsegas. *See Rahn*, 106 A.2d at 464. Additionally, the Krupas' predecessors-in-interest would have retained a right of way through Redacre. *See Riek v. Binnie*, 507 A.2d 865, 867 (Pa. Super. 1986). As such, all parties with possible claims under the 1921 Deed are already parties to this action.

Because all indispensable parties with possible claims to Redacre under the 1921 Deed are present, the trial court had subject-matter jurisdiction. The Krupa's first issue fails.

*B.     Adverse Possession*

We discuss the Krupas' second and third issues simultaneously, because they both concern whether the Martins and Balsegas acquired title to their respective halves of Redacre by adverse possession. The Krupas argue that the Martins and Balsegas failed to prove all of the elements of adverse possession, as a matter of law.

Following a bench trial concerning adverse possession, the trial court's "findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings." *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000). "We will reverse the trial court only if its findings of fact are not supported

by competent evidence in the record or if its findings are premised on an error of law." ***Wyatt Inc. v. Citizens Bank of Pa.***, 976 A.2d 557, 564 (Pa. Super. 2009) (citation omitted). Where, as here, the appellants claim legal error in the application of the doctrine of adverse possession, they raise "a question of law, over which our standard of review is *de novo* and our scope of review is plenary." ***City of Philadelphia v. Galdo***, 217 A.3d 811, 817 (Pa. 2019).

"Adverse possession is an extraordinary doctrine that permits one to achieve ownership of another's real property by operation of law." ***Id.*** at 820. "The doctrine is dependent upon an individual's possession of another's property for an enumerated period of time authorized by statute." ***Id.***; ***see also*** 68 P.S §§ 81-88 (governing claims by adverse possession); and 42 Pa.C.S. § 5530 (setting forth a 21-year-limitations period in actions for the possession of real property). Through these statutes, the General Assembly "encourages those who diligently develop and improve the land as against those who are content to hold the bare legal title inactively for many years." ***Galdo***, 217 A.3d at 820.

In Pennsylvania, parties seeking title by adverse possession must prove "actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for a period of 21 years." ***Id.***, *citing* ***Baylor v. Soska***, 658 A.2d 743, 744 (Pa. 1995). "Each of these elements must exist, otherwise the possession will not confer title." ***Watkins v. Watkins***, 775 A.2d 841, 846 (Pa. Super. 2001).

In the Krupas' view, the Martins did not possess Redacre long enough to win title by adverse possession, and neither the Martins nor the Balsegas demonstrated exclusive or hostile possession. The Krupas contend the trial court erroneously tacked the time of the Martins' predecessors-in-interest to find that they possessed Redacre for more than 21 years. The Krupas also believe that the Martins and Balsegas failed to exclude each other or anyone else from Redacre.

In their brief, the Martins and Balsegas fail to respond to the Krupas' arguments regarding adverse possession. In fact, the words "adverse possession" do not appear until they discuss whether the Krupas have a prescriptive easement through Redacre. **See** Martins' and Balsegas' Brief at 8, 18. Instead, they suggest the issue is whether the Krupas "have any kind of rights in [Redacre] via any recorded document?" Martin/Balsega Brief at 2.

The Martins and Balsegas fail to recognize they have the burden of proving their claim of adverse possession. Because they brought this action for quiet title to Redacre, they must prove good title, as against the whole world. "Plaintiff[s] bringing a quiet title action [have] the burden of proof and must recover on the strength of [their] own title." **Woodhouse Hunting Club, Inc. v. Hoyt**, 183 A.3d 453, 457 (Pa. Super. 2018). Likewise, "the burden of proving adverse possession falls on the one asserting title under it . . . ." **Conneaut Lake Park v. Klingensmith**, 66 A.2d 828, 829 (Pa. 1949).

The Krupas contend the Martins and Balsegas offered insufficient proof of certain elements to establish adverse possession. Here, we consider two of those elements – the duration of possession and lack of exclusivity.

We begin with the element of time. The Martins admit they have **not** possessed Redacre for the requisite 21-year-limitation period. Instead, the Martins rely upon the doctrine known as "tacking" to count the time in possession of their immediate predecessors-in-interest. They make this claim, notwithstanding the absence of any metes and bounds in their deed that encompass Redacre within that conveyance.

The trial court overlooked this critical shortcoming in the evidentiary record. Instead, it considered "the totality of the circumstances and the context in which the predecessor's prior use and interests [were] conveyed." Trial Court Opinion, 6/24/20, at 25. Rather than basing its decision upon the operable deed, the trial court relied upon Ms. Martins' testimony "that she has seen pictures of [the predecessors'] cars parked on the disputed parcel and [they] had resided there for twelve years prior to" the Martins. *Id.* This was error, as a matter of law, under our precedents.

Where, "as here, the claimant of the disputed land has not possessed the land for the required 21-year period, the claimant must tack its predecessor's period of adverse possession for adverse possession to exist." *Watkins*, 775 A.2d at 846. In order to tack the time in possession of one's predecessors for purposes of acquiring title to land, the subsequent possessor must receive a deed describing the metes and bounds of the land

- 15 -

in question. The "acceptance of a deed describing boundary lines confines the premises conveyed to the area within the boundaries, and such a deed ***does not*** convey inchoate rights acquired by incompleted adverse possession. Each predecessor must have claimed title to the property in dispute and have purported to include it." ***Id.*** at 846–47 (emphasis added).

Here, Ms. Martins' testimony about pictures of her predecessors' use is insufficient, as a matter of law, to prove any intent by her predecessors-in-interest to convey their inchoate rights to Redacre. The only legally sufficient evidence of what the Martins' predecessors intended to convey is the words within the four corners of their deed to the Martins. ***See Watkins***, ***supra***. That instrument is silent as to any inchoate rights the predecessors may have had to Redacre prior to selling Lots 14 and 15 to the Martins. Therefore, the Martins' predecessors evidenced no intention of conveying the time they spent adversely possessing Redacre to the Martins.

Thus, we agree with the Krupas. The Martins may not tack twelve years in possession from their predecessors-in-interest to their own time possessing Redacre. Accordingly, they have not possessed Redacre for the requisite 21 years to acquire title by adverse possession.

Turning to the exclusivity element, we again agree with the Krupas. The evidence is insufficient, as a matter of law, to show exclusivity by the Martins and Balsegas. In order for a party's possession to be exclusive, that party must demonstrate "a type of possession which would characterize an

owner's use." ***Brennan v. Manchester Crossings, Inc.***, 708 A.2d 815, 818 (Pa. Super. 1998). Exclusive possession to establish adverse possession "need not be absolutely exclusive; it need only be of a type of possession which would characterize an owner's use." ***Lyons v. Andrews***, 313 A.2d 313, 316 (Pa. Super. 1973). "In general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own use and the exclusion of others." ***Id.*** at 315–16.

In ***Lyons***, this Court found the element of exclusive possession to be present. We stated that the adverse possessor's "dominion over the disputed strip was quite apparent. In assuring its maintenance and using the area for family activities, [the adverse possessor] exercised all the control over the strip that could reasonably be expected in view of its character, short of erecting a fence between herself and her neighbors." ***Id.*** at 316.

Here, by contrast, the Martins and Balsegas demonstrated no such dominion over Redacre. In fact, all of the record testimony establishes that they jointly used Redacre for parking and jointly maintained and landscaped it. Moreover, after Mr. Balsega observed the Krupas drive through Redacre he "admitted that he did not confront or stop them." Trial Court Opinion, 6/24/20, at 22.

Excluding others from one's land is a hallmark of ownership. *See, e.g., Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979) ("one of the most essential sticks in the bundle of rights that are commonly characterized as property [is] the right to exclude others."). Thus, this Court has found the element of exclusivity proven where the "possession was to the general exclusion of others and [the adverse possessor] remonstrated with persons who attempted, without permission, to use the land." *Reed v. Wolyniec*, 471 A.2d 80, 84 (Pa. Super. 1983).

Unlike the adverse possessors in *Reed* and *Lyons*, the Martins and Balsegas have not excluded anyone from Redacre. By communally sharing Redacre with each other, they nullified this element of adverse possession.

Moreover, the trial court credited the testimony of the Krupas and of their many witnesses that they all used Redacre for ingress and egress from their for many decades. This finding further eliminates the element of exclusivity, because the Martins and Balsegas allowed that use – which was a trespass against the true, lawful possessor of Redacre[8] – to continue unabated.

Thus, the Martins and Balsegas have failed to meet their burden of proof for quiet title. We conclude the trial court erred, as a matter of law, by

---

[8] *See, e.g., Briggs v. Sw. Energy Prod. Co.*, 224 A.3d 334, 346 (Pa. 2020) ("a trespass occurs when a person who is not privileged to do so intrudes upon land in possession of another, whether willfully or by mistake.").

granting the Balsegas title to the northwestern half of Redacre and the Martins title to its southeastern half.[9]

The second and third claims of error afford the Krupas appellate relief.

C.    *The Krupas' Remaining Issues*

The Krupas have three other appellate issues, which allege that either the public-at-large or the Krupas have a right of way through Redacre. However, in their Answer and New Matter, the Krupas did not file any counterclaims seeking this type of declaratory relief.  *See* Krupas' Answer and New Matter at 6-7.

In Pennsylvania, a counterclaim is raised when a defendant sets "forth in the answer under the heading 'Counterclaim' any cause of action cognizable in a civil action which the defendant has against the plaintiff at the time of filing the answer."  Pa.R.C.P. 1031(a).  "[I]t is clear that a defense or affirmative defense is not properly called an 'action' or a 'claim' but is rather a ***response*** to an action or a claim."  ***Sass v. AmTrust Bank***, 74 A.3d 1054, 1061 (Pa. Super. 2013) (citation omitted) (emphasis

---

[9] Notably, the trial court's underlying premise regarding the succession of the Burchinals' title to Redacre was also erroneous.  The trial court ruled that Redacre "is an ***orphaned*** tract from Joseph G. Burchinal, as assignee of Luther W. Burchinal."  Trial Court Opinion, 6/24/20, at 18 (emphasis added). Under Pennsylvania law, a parcel of real estate is never "orphaned." Assuming that Mrs. Burchinal died intestate without any surviving heirs, title to Redacre would have passed from her, by an operation of law, to the Commonwealth of Pennsylvania.  ***See*** 20 Pa.C.S.A. § 2101(a) (regarding intestate succession).

added). Here, because the Krupas' New Matter was only a defensive response to the Martins' and Balsegas' claims and was not entitled a "counterclaim," the Krupas did not assert any counterclaims for their own declaratory relief under our Rules of Civil Procedure.

As the Krupas did not bring any counterclaims to establish their own rights to use Redacre, we find these three issues to be waived. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

### IV. Conclusion

In sum, the trial court had jurisdiction, because all indispensable parties were present for this quiet-title action. Additionally, the trial court erred by granting the Martins and Balsegas title to their halves of Redacre.

We recognize this disposition leaves Redacre's title and use in limbo. However, on this record, the Krupas have not sufficiently alleged and the Martins and Balsegas have not sufficiently proven a legal interest in Redacre.

Judgment vacated. Case remanded for entry of judgment against the Martins and the Balsegas.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2021